UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MAUREEN S.,

          Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

Case No. C18-1667-MLP

ORDER

## I.    INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred by discounting her subjective testimony, her husband's lay statement, and the opinions of two of her treating physicians.[1] (Dkt. # 8 at 1.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.    BACKGROUND

Plaintiff was born in 1956, has a college degree, and has worked as an Alaska Airlines

---

[1] Plaintiff also assigns error to the ALJ's finding that she could perform her past work, but in doing so restates arguments pertaining to the ALJ's assessment of her own subjective allegations. (Dkt. # 8 at 17-18.) Thus, this assignment of error need not be addressed separately.

ORDER - 1

flight attendant, reservations agent, and customer care manager. AR at 43, 62-63. Plaintiff was last gainfully employed in July 2015. *Id*. at 190.

In April 2015, Plaintiff protectively applied for benefits, alleging disability as of July 31, 2015. AR at 151-52. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing. *Id*. at 86-91, 94-95. After the ALJ conducted a hearing on July 31, 2017 (*id*. at 36-65), the ALJ issued a decision finding Plaintiff not disabled. *Id*. at 15-27.

Utilizing the five-step disability evaluation process,[2] the ALJ found:

Step one: Plaintiff has not engaged in substantial gainful activity since her alleged onset date.

Step two: Plaintiff's lumbar spine degenerative disc disease, obesity, peripheral neuropathy, and fibromyalgia are severe impairments.

Step three: These impairments do not meet or equal the requirements of a listed impairment.[3]

Residual Functional Capacity ("RFC"): Plaintiff can perform light work with additional limitations: she can lift and/or carry up to 20 pounds occasionally and 10 pounds frequently. She can stand and/or walk for a total of six hours in an eight-hour workday, and sit for a total of six hours in an eight-hour workday. She can occasionally climb ramps/stairs, but can never climb ladders, ropes, or scaffolds. She can frequently balance and stoop, and occasionally kneel, crouch, and crawl. She must avoid concentrated exposure to extreme cold, heat, vibration, fumes, odors, dusts, gases and poor ventilation, as well as hazards such as moving machinery and unprotected heights.

Step four: Plaintiff can perform her past relevant work as a reservations agent and senior reservations agent, and is therefore not disabled.

AR at 15-27.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-6. Plaintiff appealed the final decision of the Commissioner to this Court.

---

[2] 20 C.F.R. § 404.1520.
[3] 20 C.F.R. Part 404, Subpart P, Appendix 1.

ORDER - 2

## III. LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

## IV. DISCUSSION

### A. The ALJ Did Not Harmfully Err in Discounting Plaintiff's Testimony or Plaintiff's Husband's Statement

The ALJ discounted Plaintiff's testimony for several reasons: (1) the medical evidence documented the existence of symptoms, but contradicted her alleged functional limitations; (2) Plaintiff received limited, conservative care for her allegedly disabling conditions; and (3) Plaintiff's activities contradicted her described limitations. AR at 20-24. Plaintiff contends that

these reasons are not legally sufficient, and the Court will consider each reason in turn.

### 1. *Legal Standards*

It is the province of the ALJ to determine what weight should be afforded to a claimant's testimony, and this determination will not be disturbed unless it is not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1988).

Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014) (citing *Molina*, 674 F.3d at 1112). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). When evaluating a claimant's subjective symptom testimony, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

### 2. *Normal Objective Findings*

The ALJ details a number of objective medical findings that she interprets to be inconsistent with Plaintiff's allegations. For example, the ALJ mentions Plaintiff's lack of major

neuromuscular deficits, lack of focal weakness in the arms or legs, normal gait and station, full strength, and intact sensation and pulses. AR at 21-22. Plaintiff does not deny that the objective medical record contains largely normal findings, but contends that fibromyalgia does not typically lead to abnormal findings and thus its symptoms cannot be discounted due to lack of objective support. (Dkt. # 8 at 5-6.)

Plaintiff cites *Revels v. Berryhill*, which holds that normal objective findings as well as conservative treatment are not inconsistent with debilitating fibromyalgia pain. 874 F.3d 648, 666-67 (9th Cir. 2017). The Commissioner distinguishes *Revels* on the grounds that in this case, Plaintiff specifically alleged that her fibromyalgia caused muscle weakness, and thus normal objective findings as to full muscle strength and lack of weakness are inconsistent with that allegation. (Dkt. # 13 at 3-4.) Plaintiff also alleged that she had limited ability to stand or walk without frequent resting, which is also reasonably inconsistent with the numerous objective findings indicating normal gait and station and the medical advice to perform aerobic exercise regularly, increasing in duration over time. The ALJ thus identified medical findings that are specifically inconsistent with Plaintiff's alleged limitations, rather than broadly finding normal objective findings to be inconsistent with fibromyalgia pain, as in *Revels*.

        3.    *Activities*

The ALJ catalogued Plaintiff's physical and mental activities, finding them to be inconsistent with her alleged limitations. AR at 22-24. For example, the ALJ contrasted Plaintiff's allegations of disabling pain with her ability to cook, complete household chores, drive, shop, and attend appointments. *Id*. at 23. The ALJ also noted that Plaintiff exercises daily via swimming, walking, and stationary biking, and that she engages in regular travel to Hawaii, California, and Maine multiple times per year. *Id*. The ALJ found Plaintiff's allegations of

memory and concentration deficits to be inconsistent with her ability to manage her finances, use computers, read, sew, knit, garden, and watch television. *Id.*

Plaintiff contends that the ALJ erred in discounting her allegations in light of her activities because (1) her doctors told her to exercise, and therefore she should not be penalized for complying with their recommendations; and (2) her activities did not actually contradict her allegations because it is not clear that she performed her activities in a manner inconsistent with her claimed limitations. (Dkt. # 8 at 7-10.) Neither of these arguments persuasively shows that the ALJ erred in assessing Plaintiff's activities. The ALJ did not penalize Plaintiff for complying with recommendations; she reasonably found that Plaintiff's ability to engage in daily exercise consisting of swimming or walking conflicted with her alleged inability to walk more than 150 feet without stopping to rest. *Compare, e.g.*, AR at 224, 229 (Plaintiff's allegations of physical limitation) *with id.* at 550 (Plaintiff's August 2016 report to her doctor that she swims or walks for 60 minutes six times a week). Plaintiff's regular long-distance travel is also reasonably inconsistent with Plaintiff's alleged severe limitations in sitting, walking, and standing. *See, e.g.*, *id.* at 453 (doctor's note describing Plaintiff's recent one-month trip to the East Coast, involving "a fair bit of exertion").

Furthermore, Plaintiff alleged that she could pay attention for only two minutes (AR at 229), which is reasonably inconsistent with Plaintiff's demonstrated ability to manage her finances, use computers, read, sew, knit, garden, and watch television. *See id.* at 446 (Plaintiff's description of her activities). Because the ALJ cited activities that contradict Plaintiff's specific allegations, the Court finds that the ALJ properly relied on Plaintiff's activities to discount her allegations. *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (activities may undermine credibility where they (1) contradict the claimant's testimony or (2) "meet the threshold for

transferable work skills"). The explicit contradiction between the alleged limitation and the activity distinguishes this case from cases cited by Plaintiff where courts have criticized an ALJ's finding that an ability to complete activities of daily living is inconsistent with an allegation of overall disability. (Dkt. # 8 at 8 (citing *Moore v. Barnhart*, 278 F.3d 920, 925 n.2 (9th Cir. 2002); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001)).)

Plaintiff emphasizes in her Reply that even if her activities contradict some of her specific allegations, they do not contradict other allegations. (Dkt. # 14 at 1-2.) This argument does not demonstrate error in the ALJ's decision, however, because the ALJ did not entirely discount all of Plaintiff's allegations: the RFC assessment accounts for some limitations. *See* AR at 19. Plaintiff has not shown that the ALJ erred in discounting her testimony in part due to her activities.

### 4. *Conservative Treatment*

The ALJ noted that Plaintiff received only limited, conservative care (pain medication) for her fibromyalgia, and that Plaintiff's symptoms "stabilized" with medication. AR at 21-22. The ALJ suggested that this degree of and response to treatment undermined Plaintiff's allegation of a disability. *Id.*

Plaintiff argues that this reason is not valid because the only available treatment for fibromyalgia is conservative. (Dkt. # 8 at 6-7.) Plaintiff also points out that "stable" symptoms are not necessarily not severe. (*Id.* at 7.) The Commissioner does not address this line of the ALJ's reasoning. The Court agrees with Plaintiff that this reason is not convincing, given the limited range of available fibromyalgia treatment and the lack of specificity in the reference to "stable" symptoms.

This error is harmless, however, in light of the other valid reasons provided by the ALJ

for discounting Plaintiff's testimony. *See Carmickle v. Comm'r of Social Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008). Because Plaintiff has not shown that the ALJ harmfully erred in assessing her testimony, this portion of the ALJ's decision is affirmed.

    *5.*  *Lay Statement*

  The ALJ's valid reasons to discount Plaintiff's testimony also serve to support the ALJ's interpretation of Plaintiff's husband's similar statement. *See* AR at 26 (ALJ's finding that Plaintiff's husband's statement is undermined by the same evidence that undermines Plaintiff's testimony), 215-22 (Plaintiff's husband's statement). Accordingly, the Court affirms the ALJ's assessment of Plaintiff's husband's statement. *See Valentine v. Comm'r of Social Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (because "the ALJ provided clear and convincing reasons for rejecting [the claimant's] own subjective complaints, and because [the lay witness's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting [the lay witness's] testimony")).

  **B.**  **The ALJ Did Not Err in Discounting Medical Opinion Evidence**

  Plaintiff challenges the ALJ's discounting of opinions provided by two of her treating physicians. The Court will consider each physician's opinions in turn.

    *1.*  *Legal Standards*

  As a matter of law, more weight is given to a treating physician's opinion than to that of a non-treating physician because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." *Magallanes*, 881 F.2d at 751; *see also Orn*, 495 F.3d at 631. A treating physician's opinion, however, is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted. *Magallanes*, 881 F.2d at 751. If an ALJ rejects the opinion of

a treating or examining physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not contradicted by other evidence, and specific and legitimate reasons if it is. [4] *Reddick*, 157 F.3d at 725. "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* (citing *Magallanes*, 881 F.2d at 751). The ALJ must do more than merely state his/her conclusions. "He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)). Such conclusions must at all times be supported by substantial evidence. *Reddick*, 157 F.3d at 725.

2. *Annette Huang, M.D.*

Plaintiff's treating neurologist, Dr. Huang, completed a physical RFC questionnaire form in June 2017 describing Plaintiff's symptoms and limitations. AR at 682-86. Dr. Huang indicated that all of her answers describing Plaintiff's workplace limitations were based on Plaintiff's self-report. *Id*. at 686.

The ALJ gave little weight to Dr. Huang's opinion, finding it so severe as to be inconsistent with the many normal objective findings in the medical records and unreliable due to its reliance on Plaintiff's self-report, which was properly discounted by the ALJ. AR at 25. The ALJ also found that Dr. Huang's report was inconsistent with Plaintiff's activities, "most notably" her regular aerobic exercise and frequent travel to Maine, California, and Hawaii. *Id*.

---

[4] Plaintiff notes that the State agency consultants' opinions contradicted the opinions at issue here. (Dkt. # 14 at 3-5.) To the extent Plaintiff suggests that the ALJ erroneously discounted the treating doctors' opinions because they conflicted with the State agency opinions, this suggestion is not supported by the text of the ALJ's decision: the ALJ does not cite the State agency opinions as a reason to discount the treating doctors' opinions. AR at 25. The existence of contrary opinions triggers the ALJ's obligation to provide specific, legitimate reasons to discount the treating doctors' opinions.

Plaintiff notes that Dr. Huang's opinion references her treatment of Plaintiff as well as some clinical findings (AR at 682), and argues that Dr. Huang's opinion was properly informed by their treating relationship and Plaintiff's symptoms. (Dkt. # 8 at 16.) It is undisputed that Dr. Huang did treat Plaintiff and was aware of her symptoms, but her explicit reference to Plaintiff's self-report as the sole basis for the functional limitations that she described is nonetheless a specific and legitimate reason to discount Dr. Huang's opinion. *See Ghanim v. Colvin*, 763 F.3d 1154, 1162-63 (9th Cir. 2014) (ALJ may reject treating provider's opinions if based "to a large extent" on discredited self-reports and not clinical evidence).

Furthermore, as found by the ALJ, some of Plaintiff's activities directly contradict the limitations described by Dr. Huang. For example, Dr. Huang indicated that Plaintiff cannot sit for even two hours total in an eight-hour workday, yet Plaintiff regularly traveled to Hawaii, Maine, and California on flights longer than two hours. *See* AR at 684. Dr. Huang also indicated that Plaintiff could not walk farther than half a block without resting or experiencing severe pain, and yet Plaintiff reported an ability to walk for exercise on a daily basis. *See id*. These inconsistencies also support the ALJ's discounting of Dr. Huang's opinion. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001) (affirming an ALJ's rejection of a treating physician's opinion that was inconsistent with the claimant's level of activity).

Because the ALJ provided specific, legitimate reasons to discount Dr. Huang's opinion, the ALJ's assessment of this opinion is affirmed.

### 3. Anshul Pandhi, M.D.

Dr. Pandhi, Plaintiff's treating rheumatologist, completed two form opinions: in March 2016 he completed the same form RFC questionnaire that Dr. Huang completed (AR at 479-82), and in April 2017 he completed a fibromyalgia-specific RFC questionnaire (*id*. at 670-79). The

ALJ discounted both of Dr. Pandhi's opinions because they were inconsistent with the many normal findings in the objective record, and instead mirrored the limitations Dr. Huang described, which were admittedly based on Plaintiff's discredited self-report.[5] *Id*. at 25. The ALJ found Dr. Pandhi's opinions to be inconsistent with his recommendation to Plaintiff to continue her daily aerobic exercise, because she reported exercising for longer than Dr. Pandhi indicated she could stand or walk. *Id*.

Plaintiff argues that the ALJ erred in discounting Dr. Pandhi's opinion due to lack of support in the objective medical record, because fibromyalgia typically lacks objective support. (Dkt. # 8 at 13-14.) But the ALJ did not disagree that Plaintiff had fibromyalgia; she found fibromyalgia to be a severe impairment at step two and included physical restrictions in her RFC assessment. A finding that a claimant has fibromyalgia does not imply that any and all limitations must be accepted and cannot be disputed by reference to the objective record, however. *See Castle v. Berryhill*, 2018 WL 4904778, at *4 (C.D. Cal. Oct. 9, 2018) ("A diagnosis of fibromyalgia is not a free disability card that renders all medical evidence irrelevant for all purposes." (quoting *Melendez v. Astrue*, 2011 WL 6402287, at *6 (C.D. Cal. Dec. 20, 2011))).

In this case, the ALJ's decision references objective findings explicitly contradicting Dr. Pandhi's opinion, which supports the ALJ's assessment. The objective findings as to Plaintiff's full strength, for example, undermine Dr. Pandhi's opinion that she could lift 10 pounds only occasionally and never lift 20 pounds or more. *See* AR at 481, 676. The Ninth Circuit has affirmed an ALJ's rejection of treating providers' opinions regarding the impact of fibromyalgia, on the grounds that the objective evidence conflicts with the claimed limitations. *See, e.g.*, *Smith*

---

[5] The ALJ asked Plaintiff at the hearing if she knew why the opinions from Drs. Huang and Pandhi were identical, and she testified that she described the same symptoms to both doctors. *See* AR at 55-56.

*v. Berryhill*, 752 Fed. Appx. 473 (9th Cir. Jan. 2, 2019); *Reichley v. Berryhill*, 723 Fed. Appx. 540 (9th Cir. May 23, 2018).

Furthermore, the ALJ reasonably found that Plaintiff's ability to exercise daily contradicts Dr. Pandhi's conclusions, such as his indication that Plaintiff could not walk half a block without rest or severe pain, and could stand/walk for only 10 minutes in an eight-hour workday. *See* AR at 480. As with Dr. Huang's opinion, this conflict is a legitimate reason to discount Dr. Pandhi's opinions. Accordingly, the Court finds that the ALJ did not err in discounting Dr. Pandhi's opinions.

## V. CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 14th day of June, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge